LEFEVERS v. DIERKS LUMBER & COAL COMPANY.

Opinion delivered November 12, 1923.

TAXATION—DONATION OF DECEASED HUSBAND'S LAND BY WIDOW'S SECOND HUSBAND.—Where land was forfeited to the State for taxes after the owner's death, and the surviving wife subsequently moved on the land with her second husband, who thereafter took a donation deed to the land, with knowledge on the part of the surviving heirs that he was not acting as his wife's agent but in his own right, such heirs could not claim the land as having been redeemed by the surviving wife.

Appeal from Pike Chancery Court; *James D. Shaver,* Chancellor; affirmed.

STATEMENT OF FACTS.

Mrs. M. A. Lefevers and Mrs. Lue M. Garner brought this suit against the Dierks Lumber & Coal Company to have the title to certain timber divested out of the defendant and invested in them, and to enjoin the defendant from cutting down said timber.

The defendant denied that the plaintiffs were the owners of the land, and averred that it had purchased the timber from the owner thereof.

It appears from the record that Monroe Cannon formerly owned the land, which is situated in Pike County, Ark., and died between thirty-five and forty years ago, leaving surviving him his widow and two daughters, who are the plaintiffs in this action. At the time Monroe Cannon died one of his daughters was about four and the other six years of age. At the date of his death Cannon and his wife resided on a tract of land belonging to her father about two and a half miles from the tract in question. There was a small house and about six acres of cleared land on the 160 acres in question. The plaintiffs never conveyed their interest in the land to any one.

J. A. Tedder was the principal witness for the defendant. According to his testimony, he first received a donation certificate to the land on the 15th day of January, 1904; and on March 16, 1907, the Commissioner of State Lands issued to him a donation deed. On the 17th of January, 1910, to correct a mistake in the first deed, the Commissioner of State Lands executed another deed to J. A. Tedder. The donation deed contained the recitation that the land was forfeited to the State for the nonpayment of taxes in 1888. J. A. Tedder says that he went into possession of the land four, five or six years before he donated it. A few years before he donated it he married the widow of Monroe Cannon, deceased. She was living with him as his wife at the time he moved on the land and at the time he made application to donate it. At the time Tedder donated the land he talked with Mrs. Lefevers about it, and told her that she and her sister might donate it if they wished to. Mrs. Tedder replied that they did not want it. Tedder did not talk with Mrs. Garner about the land, but she lived in the neighborhood, and knew that he had donated it, and that he had claimed it as his own ever since. The youngest of the plaintiffs was about twenty-five years of age at the time Tedder

donated the land.   Tedder executed a deed to the Dierks
Lumber & Coal Company to the timber on part of the
land on the 14th day of September, 1911.   This deed was
duly filed for record on the 22nd day of January, 1912.
The donation deed of J. A. Tedder was filed for record
on the 3d day of February, 1910.

The chancellor found the issues in favor of the
defendants, and dismissed the complaint of the plaintiffs
for want of equity.   The plaintiffs have appealed.

*Featherstone & Palmer* and *Alfred Featherstone,* for
appellant.

The land in question was the homestead of Monroe
Cannon at the time of his death.   69 Ark. 596.   His
widow had a life estate, while the fee to the lands was in
appellant.   It was the widow's duty to pay the taxes
while she remained in possession, and if the land was
forfeited, its repurchase amounted to no more than the
payment of taxes.   128 Ark. 605.   Appellants and Mary
E. Tedder were cotenants, and, as such, appellants could
not be charged with laches.   128 Ark. 605.   The relation
of J. A. Tedder to appellants was that of trustee by
implication, and he could not acquire rights antagonistic
to them.   49 Ark. 242.   The homestead is created equally
for the benefit of the widow and children, and neither can
prejudice the rights of the other.   27 Ark. 280; 72 S. W.
994.   Tedder acquired no rights in the land, hence he
could convey none.   102 Ark. 611.   Appellants, as remain-
dermen, have the right to prevent waste.   5 Pomeroy's
Eq. Juris., §§ 491-2; 95 Ark. 18.   The statute of limita-
tion does not run against the remainderman until the
death of the life tenant.   97 Ark. 33.

*Abe Collins* and *Lake & Lake,* for appellees.

The judgment of the trial court should not be over-
turned unless against the clear weight of the evidence.
86 Ark. 212; 119 Ark. 133; 120 Ark. 37.   The burden of
proof is on appellants, who are seeking to establish a
trust by implication.   102 Ark. 65; 105 Ark. 318; 118
Ark. 146.   Such evidence must be full, clear and con-

vincing.   113 Ark. 207; 104 Ark. 104; 105 Ark. 318.   No
"implied trust" can be found in the transaction involved
within the rule laid down in 103 Ark. 145.   Fraud is not
alleged or proved, hence a trust *ex maleficio* cannot be
relied upon.   114 Ark. 128; 113 Ark. 36.   Tedder and
appellants were not tenants in common.   Burrell's Law
Dict.; 148 Ark. 548.   The facts of the case show an
abandonment by the widow of the homestead, and the
statute of limitations began to run against appellants
from the date of such abandonment.  65 Ark. 68.   Tedder
and appellants were in no way tenants in common, but,
conceding they were, still appellants are barred of relief,
as no contribution was ever offered or paid, as required
by law, to avail themselves of the benefit of the adverse
title purchased.    45 Ark. 177; 143 Ind. 467; 68 Neb. 459;
38 Cal. 125.   Appellants are barred by limitations.   C.
& M. Digest, 6682, 10119; 124 Ark. 379; 118 Ark. 516.

HART, J., (after stating the facts).   To reverse the
decree of the chancellor the plaintiffs rely upon the prin-
ciples of law decided in *Inman* v. *Quirey,* 128 Ark. 605.
In that case the widow and one of the heirs at law of the
deceased owner continued to reside on the homestead, and
failed to pay the taxes thereon.   The land was sold for
the nonpayment of taxes, and was purchased by a person
who reconveyed to the widow and heir at law in pos-
session of it.   It was held that it was the duty of the life
tenants to pay the taxes, and that the reconveyance to
them by the purchaser at the tax sale amounted to a
redemption of the land by the widow and heir at law, and
extinguished the tax title of the purchaser.

We do not think the facts of this case fall within
the principles of law there decided.   If Tedder had pur-
chased the land as the agent of his wife, or to in any
manner strengthen her title, the rule in that case would
apply.

It appears from the record in this case, however, that
the land was forfeited to the State for the nonpayment
of the taxes in 1888.   The widow of the deceased owner

did not live on the land at that time.  She subsequently married J. A. Tedder, and he obtained his donation certificate in 1904.  He says that he had moved on the land with the widow of the deceased owner, whom he had married some four, five, or six years before this.  Then at the earliest period of time, according to his testimony, which is not contradicted, Tedder moved on the land in 1898, and married the widow of Monroe Cannon some time in 1892.  This was several years after the land had been forfeited for taxes. Tedder says that he only made application to donate the land after he had talked the matter over with one of the plaintiffs, who told him that they did not wish to donate it.  He says that the other plaintiff lived in the neighborhood and knew that he had donated the land, and made no objection thereto. Tedder built two box-houses on the land and cleared thirty-five acres of it. From the time he donated it until the present time he has claimed it as his own, and it is fairly inferable from the evidence in the record that the plaintiffs knew that he was claiming to be the owner of the land in his own right, and did not donate it as agent of his wife, or to enable her to obtain title thereto.

Therefore the decree will be affirmed.