ROBERTS *v*. MILLER.

## Opinion delivered March 7, 1927.

1.  EXECUTORS AND ADMINISTRATORS—SETTLEMENT—COLLATERAL AT-
    TACK.—The final settlement and discharge of an administratrix is
    a final accounting of decedent's estate, and is a judgment of a
    court of record, which is impervious to collateral attack, and,
    if not appealed from, can only be investigated for fraud or some
    ground of equitable jurisdiction.

2.  DESCENT AND DISTRIBUTION—ACTIONS BY HEIRS.—Heirs of a
    decedent, whose estate has been settled, are the proper parties to
    bring a suit to subject certain land of a decedent to payment
    of a probate judgment obtained by the former decedent against
    the estate of the latter decedent, and, the latter's estate having
    been likewise settled, the action was properly brought against the
    wife and children of the latter, where the land had been the
    latter's homestead.

3.  HOMESTEAD—LIABILITY TO DECEDENT'S DEBTS.—Chancery has juris-
    diction to subject the homestead of a decedent to payment of a
    probated claim after death of his widow or her abandonment of
    the homestead, and after decedent's youngest child has attained
    the age of 21 years, but suit must be brought within three years
    thereafter.

4.  TAXATION—PERSONS WHO MAY PURCHASE AT TAX SALE.—Where a
    mother residing with decedent's children on his homestead bought
    the homestead at tax sale, her title so obtained was a redemp-
    tion from the tax forfeiture.

5.  TAXATION—DUTY TO PAY TAXES.—Minor children of a decedent
    residing upon his homestead and his rightful widow have the
    duty to pay the taxes on the homestead.

6.  TAXATION—TAX SALE—RIGHT TO PURCHASE.—One cannot occupy
    and enjoy the use of premises and at the same time acquire a valid
    tax title by permitting the lands to be sold for taxes and pur-
    chasing at the sale based upon a forfeiture during the time he
    was so occupying and enjoying the premises.

Appeal from Scott Chancery Court; *J. V. Bourland,*
Chancellor; reversed on appeal; affirmed on cross-appeal.

*Bates & Duncan* and *Daniel Hon,* for appellant.

*John P. Roberts* and *Evans & Evans,* for appellee.

HUMPHREYS, J. The questions necessary to be deter-
mined on this appeal and cross-appeal, arising out of the
pleadings filed and testimony adduced, are, whether
appellants had a right to bring the suit, and, if so,

whether Lidmilla Miller's purchase of the lands involved in the action at tax sale, and from a purchaser at tax sale, amounted to a redemption of said lands from tax sale. The contention of appellees is that she was a stranger to the title and acquired the absolute ownership of the lands under tax deeds; whereas appellants contend that, on account of her fiduciary relationship to her children, with whom she resided on the lands, she could not acquire ownership of them by purchase at tax sales, or from purchasers at tax sales, based upon tax forfeitures during the period of their occupancy and enjoyment of said lands.

The purpose of the suit was to subject the lands in question to the payment of a probate judgment in the sum of $2,599.35 obtained by M. C. Miller on July 13, 1914, against the estate of Frank Miller, deceased. After securing the judgment, M. C. Miller died intestate on February 26, 1916, leaving him surviving his widow, Arizona Miller, now Arizona Roberts, and his children, Joseph Miller, Margie Miller, Antone Miller, Louie Miller, and Carroll Miller, all being minors except Joseph. Prior to the institution of this suit J. M. Roberts purchased Joseph Miller's interest in the judgment made the basis of the action. The minors are represented in the suit by their guardian and next friend. Joseph Miller was subsequently made a party plaintiff in the action. All of the appellants, plaintiffs below, are the sole and only heirs of M. C. Miller, deceased. Frank Miller, Jr., was an older son of M. C. Miller, and administered upon his father's estate. Pending the administration he died, and Arizona Roberts was appointed administratrix in succession, on November 21, 1916, made final settlement and was discharged on April 15, 1920. In her final settlement she mentioned the fact that the bondsmen of Frank Miller, Jr., claimed her husband's estate was indebteded to him in the sum of $424.69, and that there was no money to pay it. The administrator of the estate of Frank Miller, Jr., did not present a claim and obtain a judgment for it. Rudolph Shiel, claiming to be the adminis-

trator of the estate of Frank Miller, Jr., procured an execution against the estate of M. C. Miller, deceased, after the institution of this suit, in an effort to collect said claim. The record is silent as to what became of the execution.

Appellees contend that, under these circumstances, the proper and only remedy of appellant was to move in the probate court to set aside the order closing the estate and to request the appointment of an administrator to further administer same. This is not correct. The final settlement and discharge of the administratrix was a final accounting of the estate. It was the judgment of a court of record, and, no appeal having been taken from it, it was impervious to collateral attack, and can only be investigated for fraud, or some other ground of equitable jurisdiction, in a court of equity. *Stokes* v. *Pillow,* 64 Ark. 1, 40 S. W. 580; *Beckett* v. *Whittington,* 92 Ark. 230, 122 S. W. 623; *Day* v. *Johnston,* 158 Ark. 478, 250 S. W. 532. The appellants herein are the proper parties to bring the suit. Chancery has jurisdiction to subject the homestead lands of a decedent to the payment of probate judgments, after the death of the widow or the abandonment of the homestead by her and after the youngest child of the decedent has attained to the age of twenty-one. *Parks* v. *Murphy,* 166 Ark. 564, 266 S. W. 673. The statutory bar had not attached when the suit was instituted. It was brought within three years after the youngest child of Frank Miller became of age.

Preliminary to determining the second question it will be appropriate to state some of the salient facts revealed by the record. On April 11, 1911, Frank Miller died seized and possessed of the lands sought to be subjected to the payment of the judgment aforesaid, obtained by M. C. Miller's estate against Frank Miller's estate. It was Frank Miller's homestead. At the time of his death he and his supposed wife, Lidmilla Miller, had separated, and she and her children were residing on forty acres of land owned by her a short distance from her husband's homestead. Many years ago Frank Miller married Annie,

an older sister of Lidmilla Miller, and a son named Antone Frank Miller was born to them. Shortly after the birth of Antone, Frank Miller deserted Annie, and married her sister Lidmilla, representing to the latter that he had obtained a divorce from Annie. They immediately left Texas, remained in Oklahoma awhile, and later settled in Scott County, Arkansas, where they lived as man and wife until the separation. There were born to the latter marriage Mamie Trotter (*née* Mamie Miller), Flora Miller, Frances Miller, George Roy Miller. Both of Frank Miller's families constitute the appellees herein and are the defendants in this action. The instant case, in the language of distinguished counsel for appellees, is, in a sense, a sequel to the case of *Evatt* v. *Miller*, 114 Ark. 84, 169 S. W. 817, L. R. A. 1916C, 759, wherein this court ruled that the children of Lidmilla Miller were legitimate and entitled to share in their father's estate, but that Lidmilla Miller herself had no interest therein, Annie Miller being his lawful wife. The next year after the death of Frank Miller Lidmilla Miller and her children moved back to the homestead from the forty-acre tract, where the girls have continuously resided, and where Lidmilla Miller resided with her children until February, 1917, when she and Roy moved back to the forty-acre tract, where they lived until September, 1918, at which time they returned to the Miller homestead. During the entire occupancy of the homestead Lidmilla Miller utilized the homestead for farming purposes, and her children received one-half the rents and Annie Miller, the rightful widow, received the other half of them. On December 24, 1920, Annie Miller conveyed her interest in the homestead to John P. Roberts, who, in turn, conveyed same to Flora and Frances. Since that time Lidmilla Miller, Flora and Frances have occupied and used the homestead for farming purposes. In 1913, and again in 1917, they permitted the homestead lands to forfeit for taxes, and Lidmilla Miller bought a part of same directly at the tax sales and a part of them from C. E. Forrester, who had purchased some of them at the tax

sales. Prior to the institution of this suit all of Frank Miller's children had reached the age of twenty-one years. The estate of Frank Miller was administered upon in the probate court of Scott County, and closed on July 11, 1918. The administrator made final settlement, and was discharged at that time.

It was the duty of the minors residing upon the property and the rightful widow to pay the taxes upon the homestead lands of Frank Miller. Even if the rightful widow neglected her duty to pay the taxes, Frank Miller's children, who resided upon the homestead and enjoyed the rents and the privilege of farming thereon, should have paid the taxes and collected the one-half due from the rightful widow out of her part of the rents. There was ample income or rents to pay the taxes and keep up the improvements. Lidmilla Miller was the natural guardian of these children, residing with them upon the property, farmed it herself, and was therefore not a stranger to the title in the sense that she could buy tax titles in her individual name for the purpose of depriving her children of their rights, or for the purpose of preventing creditors from collecting their just claims against the estate. If permitted to circumvent creditors by purchasing outstanding tax titles of the land, she could subsequently use the same tax title to prevent her own children from claiming an interest in the estate. One cannot occupy and enjoy the use of premises and at the same time acquire a valid tax title by permitting the lands to be sold for taxes, purchasing at the sale, or purchasing from one who has purchased at the tax sale based upon a tax forfeiture, during the time he was so occupying and enjoying the premises. *Sanders* v. *Ellis,* 42 Ark. 215; *Patterson* v. *Miller,* 154 Ark. 124, 241 S. W. 875; *Lefevers* v. *Dierks Lumber & Coal Co.,* 161 Ark. 67, 255 S. W. 554; *Inman* v. *Quirey,* 128 Ark. 605, 194 S. W. 858; *Hunt* v. *Gaines,* 33 Ark. 267; *Cotton* v. *White,* 131 Ark. 273, 199 S. W. 116.

We think it clear, under the circumstances in this case, that it was the duty of Lidmilla Miller to have paid

the taxes out of the profits she received in farming the homestead and out of the rents which her children received while they resided thereon. Under the authorities cited above, even a stranger in possession of land and receiving rents and profits cannot acquire a title to it by a purchase for taxes, and such purchase would operate only as a payment of the taxes. We think the tax deeds she obtained amounted to a redemption on her part from the tax forfeitures and tax sales.

We have refrained from setting out the tax forfeitures, tax sales or the tax deeds relied upon by Lidmilla Miller to prevent appellants from subjecting the lands to the payment of the judgment obtained by the estate of M. C. Miller, deceased, against the estate of Frank Miller, deceased, or from deciding the validity or the invalidity of the tax titles, because we regard her tax titles as redemptions from the tax forfeitures and tax sales.

On account of the error indicated the decree of the court is reversed, and the cause is remanded with directions to enter a decree for the sale of the lands set out in the complaint of appellants for the payment of the judgment, and to cancel the deeds held by Lidmilla Miller under sales for taxes as a cloud on the title to said lands.