WELLS *v.* HENRY.

Opinion delivered January 11, 1932.

*Aubert Martin* and *J. R. Wilson,* for appellant.

*D. A. Bradham,* for appellee.

MEHAFFY, J.   J. T. Beard of Bradley County, Arkansas, on the 6th day of August, 1921, made a will, giving all of his property to his two children, Rossie Wells and Rufus Beard.   The will provided for the sale of the property, giving one-half to the daughter, Rossie Wells, absolutely, and the other half to be put upon interest to be paid annually to Rufus Beard, the son.   The will provided for paying Rossie Wells her one-half interest and placing the other half in some institution and paying interest annually to Rufus Beard.

The will was filed for probate, and it was agreed between Rossie Wells and Rufus Beard, the only heirs at law of J. T. Beard, that the will should be probated, and that the property should be divided according to the provision of the will, but that the property should not be sold.

The agreement entered into provides for a complete inventory of the estate and an equal division of the assets, and then provides for the sale of the property by the commissioners, the part allotted to Rossie Wells to be sold to her and deeds executed to her for the same, and the part allotted to Rufus Beard to be sold to him and a deed executed and held in escrow, he to have the entire revenue derived as rents, incomes, profits, or in any other way from same. In other words, they agreed on a division of the property, and agreed that one-half of it should be deeded to Rossie Wells, and delivered to her, and that the other half should be deeded to Rufus Beard, but that the deed should be held in escrow, and that he should receive the income from his half of the property.

The will, as we have said, was dated August 6, 1921, and J. T. Beard died on December 11, 1924. After the division of the property as above mentioned, Rossie Wells took possession of the property deeded to her, and Rufus Beard took possession of the property deeded to him for the purpose of receiving the income from said property.

After the death of J. T. Beard, and after the division of the property, improvement districts were formed and assessments made on the property deeded to Rufus Beard. These assessments were not paid by him and the property was sold for the assessments and State and county taxes, and purchased by H. T. Henry and others.

Rossie Wells brought suit in the chancery court alleging, among other things, that Rufus Beard owned a life estate only, and that he had made contracts with H. T. Henry and others under the terms of which his property was to be sold for taxes and purchased by the persons who rented said property, and that the purpose was to enable Beard to get title to the property.

A portion of the property was sold to the State for nonpayment of taxes for the year 1927, and the same property was sold for the nonpayment of paving taxes in December, 1928. It is unnecessary to recite the sales of the property other than that purchased by Henry, be-

cause all the other property was redeemed by Rossie Wells, and the only controversy here is between H. T. Henry and the appellant, Rossie Wells.

After the suit was brought Rufus Beard died, and the property then became the property of Rossie Wells, she being the only heir at law of Rufus Beard.

On August 24, 1927, Rufus Beard and H. T. Henry entered into a lease contract under the terms of which Henry was to pay Beard $15 a month for what was known as the Neeley store lot on West Pine Street in the city of Warren for a period of five years from and after September 1, 1927. The lease provided for the removal of a store building and for Henry placing such improvements on the lot as he might desire, and said improvements to remain the personal property of said Henry, with the right to remove said property within a reasonable time after the expiration of the lease. The lease, by its terms, will expire September 1, 1932.

Henry, on August 18, 1930, leased the property to the Standard Oil Company for two years, said term to begin August 24, 1930, and ending August 23, 1932.

When the property of Beard was sold for nonpayment of taxes, Henry purchased not only the property that he occupied as lessee, but also the adjoining property.

The chancery court entered a decree reciting among other things that, upon the death of J. T. Beard, all property of which he died seized and possessed passed by devise, share and share alike, to Mrs. Wells and Rufus Beard, in fee to Mrs. Wells, but with life estate only to Rufus Beard with remainder over to Mrs. Wells; that the agreement executed by Mrs. Wells and Rufus Beard, at the time the will was probated, did not change the intention of the testator with reference to the class of title willed; that, through failure of the executors to act, the estate was never partitioned, but was left intact at the date of the death of Rufus Beard; that the property, not having been partitioned, the burden of support and maintenance of Rufus Beard was imposed upon the

whole property, and that the lease executed by Rufus Beard to Henry merely subjected a moiety of the estate to the use for which part or all of the estate was subjected under the terms of this will; that the terms of the lease were reasonable, and that Henry, having bought the property for delinquent improvement taxes, to protect his lease, was between the time of purchase and redemption entitled to the use and profits of the property so bought; that he was entitled to recover the amount expended in paying taxes without deduction on account of rents; that Henry had a right to remove his property from the lot leased by him, but must restore the property to a condition such as it was before he took possession; that Mrs. Wells had a right to redeem upon paying the amounts paid out by Henry with interest and penalty.

Mrs. Wells objected to the decree of the court and prosecutes this appeal to reverse said decree.

The appellee did not object to the decree of the court, but states in his brief: "Henry has never claimed that Rufus Beard had no right of redemption, and he does not now claim that appellant has no right of redemption; he always wanted it redeemed, as he needed the money he had tied up in taxes. All he wants is his money back with interest and costs as provided by law.".

Therefore the only questions are, what appellant is required to pay to redeem the property, and whether appellee was entitled to the rents and profits after the purchase, as claimed by him.

Appellee claims that he paid out to equip this property $657.03, and that he paid out other sums at tax sales amounting to a total of $1,325.39. It is wholly immaterial what the appellee paid out to equip the property. When he entered into the lease contract with Rufus Beard, he expressly agreed to equip the property with the right to remove it at the expiration of the lease. He would therefore in no event be entitled to any amount expended for equipping the property for his use.

Appellee calls attention to § 5642 and § 5644 of Crawford & Moses' Digest. Section 5642 provides that

the purchaser in possession shall not be accountable for rents upon redemption, and § 5644 provides for redemption by one in possession under color of title. Neither of these sections has application here.

The purchase at tax sales by the appellee and the agreement made between him and Rufus Beard amounted to merely a redemption from the tax sale.

It was the duty of the life tenant to pay the taxes. Henry occupied the lands under a lease from the life tenant. Neither Beard nor Henry could acquire title to the property by purchasing it at tax sale while occupying it and receiving the rents and profits. The record in this case clearly shows that the purchase at tax sale by Henry was merely a redemption.

Henry himself says in his testimony: "I went and talked to Rufus after I bought it in. He was boarding over there in this little house Mrs. Cotton lives in, and I said, 'Rufus, you are boarding over there, and I understand are getting your board for the rent of the house,' and he said, 'I am.' 'Well,' I said, 'I want to act fair with you. You go ahead and keep that up, and I won't have anything to do with the big house, and also this other house here, you collect the rent on it and pay the paving tax next year, and I won't have anything to do with it,' and he said he would."

He then testified that when Rufus did not pay the paving taxes next time he collected the rent himself.

We said in a recent case: "One cannot occupy and enjoy the use of premises and at the same time acquire a valid tax title by permitting the lands to be sold for taxes, purchasing at the sale, or purchasing from one who has purchased at the tax sale, based upon a tax forfeiture during the time he was so occupying and enjoying the premises." *Roberts* v. *Miller*, 173 Ark. 38, 291 S. W. 814; *Sanders* v. *Ellis*, 42 Ark. 215.

This court said in speaking of the duty of the life tenants to pay taxes: "It was held that it was the duty of the life tenants to pay the taxes, and that the reconveyance to them by the purchaser at the tax sale amounted to a

redemption of the land by the widow and heir at law, and extinguished the tax title of the purchaser." *Lefevers* v. *Dierks Lumber & Coal Co.*, 161 Ark. 67, 255 S. W. 554.

In the instant case, Henry was occupying the premises under a lease from the life tenant paying $15 a month rent. He purchased at the tax sale not only the property, but adjacent property, and agreed, according to his own testimony, with Beard that Beard should continue to receive the rents of this other property. Thereafter, when Beard did not pay the next improvement tax, Henry occupied the entire premises, receiving the rents and profits. According to Henry's own testimony, there was some sort of an agreement between him and Beard.

This court quoted with approval the following: "Where a cotenant entered into negotiations with a third person by which such third person agrees to bid in the property at the tax sale and after the period of redemption expires to transfer it to the cotenant, or where, after a third person has bid in the property at a tax sale a cotenant, by collusion with him, secretly redeemed the property, and after the period of redemption has expired takes a deed from the purchaser, the transaction is fraudulent and the purchasing tenant acquires no title as against his co-tenants." *Inman* v. *Quirey*, 128 Ark. 605, 194 S. W. 858.

But, whether there was a fraudulent agreement between Henry and Beard or not, Beard was a life tenant. Henry occupied under a lease from Beard. Henry purchased at tax sale and received the rents and profits from the property purchased at tax sale, and it would be unjust and inequitable to permit him to recover the amount of money paid in taxes and keep the rents of the property.

Counsel have discussed many authorities which we do not deem it necessary to review, because, under the circumstances in this case, we think it clearly appears that Henry's purchase at a tax sale was a redemption which inured to the benefit of the owner.

The chancery court held that the appellant had a right to redeem, and there is no appeal from this finding, and, as we have already said, appellee agrees that she has a right to redeem.

Appellant calls attention to authorities holding that the improvement district taxes should be apportioned between the life tenant and owner of the fee. We do not think these authorities have any application here for the reason that, whether the taxes should have been paid by the life tenant or the owner of the fee, Henry is entitled to receive the money which he paid for taxes, less the rental value of the property during the time he held it.

The decree of the chancery court is reversed, and the cause remanded with directions to ascertain the rental value of the property during the time it was held by Henry, and deduct this sum from the amount of taxes paid by him, and the balance will be the amount Mrs. Wells will be required to pay in order to redeem.