CYPRESS CREEK DRAINAGE DISTRICT *v.* WOLFE.

## Opinion delivered June 23, 1913.

1. DRAINAGE DISTRICTS—STATUTORY PROVISIONS.—The third section of Act 110, p. 260, of the Acts of 1911, as amended by Act 455, p. 1227, of the Acts of 1911, defines the system of drainage contemplated by the Legislature in the organization of certain territory in Desha and Chicot counties into a drainage district, and provides that there shall be only one drain or canal, with laterals, to cost not more than $300,000. (Page 66.)

2. STATUTES—RULES OF CONSTRUCTION.—Acts of the Legislature should be so construed that every clause, sentence, or part, shall stand, if possible; and no section should be rendered nugatory, when it is possible to carry out the purpose of the Legislature without so doing. (Page 68.)

3. DRAINAGE DISTRICTS—ASSESSMENTS—FUTURE ASSESSMENTS.—It is premature for a chancery court to pass upon future assessments against the land in a drainage district. The land owners in the district have their proper remedy when the assessment is made. (Page 68.)

Appeal from Desha Chancery Court; *Zachariah T. Wood,* Chancellor; affirmed.

STATEMENT BY THE COURT.

This is an appeal from the judgment of the chancery court of Desha county, restraining the collection of assessments on lands, in what is known as the "Cypress Creek Drainage District." The Cypress Creek Drainage District was organized under Act 110 as amended by Act 455 of the General Assembly of 1911; approved June 2, 1911. It included within the boundaries of the district certain lands, which are described in the first section of the act, situated in the counties of Desha and Chicot. The number of acres of land in the whole district is 298,450, and the number of acres involved in the decree from which this appeal comes is 20,270. The title of the act is, "To organize certain territory in the counties of Desha and Chicot into a drainage district for the purpose of draining the lands in said district, with the right of issuing bonds and for other purposes."

The first section of the act creates the district and defines its territory.

The second section names the directors who shall then constitute the board of directors of the district, and provides the length of time for their terms of office, their qualifications, and for the election of their successors.

The third section, after providing for the meeting of the board of directors and the election of certain officers and prescribing rules for the manner of procedure on the part of the board and officers, provides as follows: "The intent and purpose of this act being to open up and make a drainage canal from the Lincoln County line to Boggy Bayou and of Boggy Bayou from the government levee to Clay Bayou in Chicot County, and the work from Boggy Bayou on down, shall be completed before the government is asked to move its Boggy Bayou levee. This board shall, as soon as practicable after the passage of this act, employ a competent engineer and other employees, and make a complete survey of said district from the Lincoln County line to said

bayou in Chicot County, and said engineer shall make all necessary maps, profiles, and furnish other information showing the size of the canal required for the purpose of this act. Said information to show the yardage of earth to be removed and other work required, and so complete in every detail, to enable the board to advertise for bids. The work shall be let to the lowest responsible bidder, who shall give bond in such amount as the board may determine. The board may make such rules and regulations as it may deem necessary for the speedy completion of said work. The board shall provide in like manner for the opening and constructing of a ditch or canal from the Lincoln County line to Boggy Bayou. After the completion of the main line ditches or canals, as above set forth, it may construct such general or main laterals, as will be of general benefit to the community, out of the funds in its hands, for the surplus sum, if there be a surplus.

The fourth section of the act contains a provision to the effect that ''Said board shall avail itself of all proper and efficient means for the drainage of the territory within its limits. It shall co-operate with the Mississippi River Commission, the United States Agricultural Department, drainage districts now or hereafter formed in Lincoln County, Chicot and other counties. It may acquire drains, ditches and canals heretofore constructed within its territory by prior drainage districts by paying the original cost and expenditure made by such prior drainage district, etc.''

The fifth section provides for the assessment of the benefits to be received and for the hearing before the board of directors, of objections by the property owners of any assessments, etc., and for an appeal from the finding of the board to the chancery court, and providing a lien on the land for the assessments adjudged, making the same paramount to other liens, except for taxes and assessments previously levied.

The sixth section provides, among other things, that ''The board shall obtain rights-of-way for its drains,

ditches and canals without cost to the district wherever possible and award damages," etc.; and further, that "as soon as the board has determined upon a system of drainage in said district and upon the awards of damages to be made therein, it shall publish a notice, etc., giving the parties affected notice to come in and object to the awards and of right to appeal from the decision of the board and to demand an assessment of his damages by a jury."

The seventh section is as follows: "Said Cypress Creek Drainage District shall not cease to exist upon the completion of the contemplated drainage system, but shall continue to exist, for the purpose of preserving same, and may at any time deepen and widen any drain, ditches and canals, when conditions require it, or may construct additional drains, ditches and canals whenever the necessity of the district demands it."

The eighth section gives the board power to "carry any drains, ditches and canals constructed by them across any highway," etc.

The ninth section provides for the auditing of the accounts and of keeping the same on file, and prescribes the form of the warrants and for the reports of the financial condition of the district, etc.

The tenth section prescribes a penalty for obstructing a "drain, ditch or canal constructed in pursuance of this act, and providing that the board shall have full charge of the construction and maintenance of the ditches, drains and canals in said district."

The eleventh section provides for the right to pass over the lands in the district by those engaged in the drainage work.

The twelfth section is, in part, as follows: "For the purpose of constructing, completing and maintaining the drains, ditches and canals contemplated by the act in order to enable the board of directors to thoroughly carry out the purpose of this act, said board shall have power to borrow money from time to time, at a rate of interest not exceeding six per cent per annum, and to

that end issue negotiable bonds of said district, not exceeding three hundred thousand dollars ($300,000), payable in lawful money of the United States, at such time and place and in such denomination as the board may prescribe.

The intervening sections down to the seventeenth provide for the payment of the bonds and coupons in annual assessments, the manner of their collection, etc.

The seventeenth section provides that "nothing in this act shall prevent or affect the creation or formation of subdistricts, including portions of the territory embraced in the drainage district created hereunder, for the purpose of constructing lateral ditches."

The board of directors, acting under the supposed authority of the act, adopted a plan or system of drainage for the territory in the district, which contemplated five main drains or canals and numerous laterals, as shown by the plat made by the engineer of the board and approved by its committee on improvement.

The estimated cost of the building of the main drains or canals was about one million, six hundred thousand dollars ($1,600,000), and the estimated cost of the complete drainage system, acording to the plans adopted by the board, was two million, two hundred and seven dollars ($2,000,207). The cost of the five main drains or canals per acre to the land in the district would be $5.44. The benefits assessed against the land in all the districts were approximately five million dollars ($5,000,000). There was testimony tending to show that if only one ditch was constructed from Cypress Creek on the Lincoln County line to Boggy Bayou the land of the appellees, the petitioners, would not be benefited. The clear preponderance of the evidence tended to show that the lands in controversy would not be benefited by the improvements as contemplated by the appellant.

The chancery court held that section 3 of the act contains the plan of drainage for the district to carry out, and limits the amount that can be expended for that drainage; that the system of drainage prescribed and

authorized by the act was not such as the board of directors of appellant district had undertaken. The chancellor in his opinion, after setting forth certain provisions of the act, states as follows: "I think it clear from these provisions of this amended act that the Legislature only contemplated the one main drainage canal, reaching from the Lincoln County line to Chicot County, as set out in said act; that it intended to limit the board to the issuance of only three hundred thousand dollars ($300,000); and that it might use any surplus remaining after the completion of this main canal to the construction of such laterals as it might deem most beneficial. So, in this opinion I hold that said board can not adopt the plan mapped out by the Government's engineers under the present act, and thereby radically and materially change the plan contemplated by this act and thereby entail a burden of seven times the amount contemplated by the act."

The chancellor further found as follows: "I hold that the large preponderance of the evidence is that no benefit is or will be received by the lands involved in these suits, and decree that the injunction heretofore issued shall be and is hereby made perpetual."

*Rose, Hemingway, Cantrell & Loughborough* and *J. Bernhardt,* for appellant.

*X. O. Pindall,* for appellee.

WOOD, J., (after stating the facts). The chancellor was correct in finding that the third section of the act defines the system of drainage contemplated by the Legislature, and also in finding that the board could not expend more than the sum of three hundred thousand dollars ($300,000) to carry out the purpose of the Legislature as expressed in the act. The intent of the Legislature is not left to be gathered from doubtful language in various sections of the act, but it is clearly and unmistakably expressed in the third section, and where the intent is clearly expressed in unambiguous language, it is the duty of the court to give that language its full

force and effect. The court can not change the plain meaning of the words used by the Legislature without trenching upon its functions. Therefore, we are of the opinion that no authority can be found in the act for the construction of five main drains or canals, with laterals, at a cost of two million, two hundred and seven dollars ($2,000,207), when the language of the act defining the system clearly expresses that there shall be one main drain or canal, with laterals, to cost not more than three hundred thousand dollars ($300,000). To do so would be doing violence to the language of the act, and would be, in our opinion, the baldest kind of judicial legislation. The language of the third section plainly shows that the Legislature had in mind only one main drain or canal, and this the Legislature divided into two parts, viz: ''From the Lincoln County line to Boggy Bayou,'' and ''of Boggy Bayou from the Government levee to Clay Bayou.'' It is plain that in the matter of construction the Legislature had in mind these divisions of the main drain into two parts, for it says: ''The work from Boggy Bayou on down shall be completed before the Government is asked to move its Boggy Bayou Levee.'' Then in another portion of this section the language is: ''The board shall provide in like manner for the opening and constructing of a ditch or canal from the Lincoln County line to Boggy Bayou.'' It is clear that the main ditch or canal was treated as having these two parts, for, after the description of these parts, the language continues: ''After the completion of the main ditches or canals as above set forth, it may construct such general or main laterals as will be of benefit to the community, etc., out of the funds in its hands, from the surplus and if there be a surplus.'' The use of the terms ''main ditches'' or ''canals'' in the plural shows that the main drainage ditch or canal before described was to be composed of the two parts as above stated, the one part running ''from the Lincoln County line to Boggy Bayou,'' and the other ''of Boggy Bayou from the government levee to Clay Bayou,'' both together

constituting the main drainage canal from its beginning at "the Lincoln County line" to its terminus at "Clay Bayou." In other words, the main canal, consisting of these two parts, was to begin at the Lincoln County line and to end at Clay Bayou. Wherever the words "drains," "ditches" and "canals" are used in other sections of the act, they must be held to have reference to the "general or main laterals" to the one main drainage canal. These "general or main laterals" are provided for in the third section of the act and are contemplated as a part of the drainage system, by which the water was to be run into and conducted through the one main drainage canal, as above described. To our minds it is clear that the Legislature did not intend that the system of drainage provided by the act should cost exceeding the sum of three hundred thousand dollars. The money to be expended for the work was to be borrowed "at a rate of interest not exceeding six per cent per annum," and "to that end negotiable bonds of the district were to be issued not exceeding three hundred thousand dollars."[1] The only purpose of issuing bonds was to borrow money to do the work. That was the only method provided for raising the necessary funds, and as we construe this provision, it was a limitation upon the power of the board to borrow money in excess of the sum of three hundred thousand dollars. No greater sum than this was authorized to be expended in the prosecution of the work. This construction is strengthened by the language also of the third section providing that after the completion of the main ditches or canals, constituting the one main channel of the drainage system, as above explained, "general or main laterals" could be constructed from the "surplus fund," if there should be a "surplus." In other words, this shows that the sum of three hundred thousand was named as the sum to be expended and no more, and if it did not require this sum to construct the main drainage canal then the residue could be used in the construction of lateral drains. To give the act the construction contended for by appel-

lants, the third and twelfth sections would have to be entirely ignored. The construction we have indicated will harmonize all parts of the act, and at the same time effectuate the legislative intent so clearly expressed and shown in the third and twelfth sections. It is our duty to so construe the act that every clause, sentence or part shall stand if possible. No section should. be rendered nugatory, where it is possible to carry out the purpose of the Legislature without so doing. *Wilson* v. *Biscoe,* 11 Ark. 44; *Kelly Heirs* v. *McGuire,* 15 Ark. 555; *Scott* v. *State,* 22 Ark. 369; *McNair* v. *Williams,* 28 Ark. 203; *Little Rock & Fort Smith Rd. Co.* v. *Howell,* 31 Ark. 119; *Beavers* v. *State,* 60 Ark. 129. The Legislature must be presumed to have had a competent knowledge of the subject-matter of the legislation. It must be presumed to have ascertained in advance the kind of improvement needed by the people affected thereby and the proximate cost of that kind of improvement. Page & Jones on Assessments, § 290. Since it has limited the cost of improvement to three hundred thousand dollars, it would be unreasonable to conclude that it had provided at the same time for a drainage system that would cost more than six times the sum fixed as the limit of its cost. Therefore, the chancery court was clearly correct in holding that the assessment based upon the alleged benefits to be derived from a system to be constructed according to the plan adopted by the appellant district was illegal and void. This conclusion makes it unnecessary to determine whether the assessment was also void for the other reasons alleged in the complaint.

The court further decreed "that no future assessment for drainage purposes be levied against any of the hereinafter described lands under the above mentioned act, creating the defendant district."

The assessments which the court declared illegal and void were made upon the alleged benefits to be derived from a system of drainage according to the plan adopted by the board of directors of the district, and that plan, as we have seen, was not authorized by the act. There

has been no assessment as yet upon the benefits, if any, to be derived by a system of drainage contemplated by the act, as we now construe it. When such assessments are made if any of the land owners in the district are not benefited they will have their remedy. It was premature in the lower court to pass upon that question before an assessment is made upon the plan of drainage contemplated by the act. It will be time enough when such assessments are made, if they are called in question, to determine that issue.

So much of the decree of the lower court, therefore, as declared that no future assessment for drainage purposes should be levied against any of the lands described under the above-mentioned act was premature, and therefore erroneous.

So much of the decree of the lower court, therefore, as declares that "no future assessment for drainage purposes be levied against any of the hereinafter described lands under the above mentioned act shall be levied" will be vacated and set aside, and the decree as thus modified will be affirmed.