Argued on demurrer July 12, sustained and proceeding dismissed
July 24, 1917.

## BETHUNE *v.* FUNK, AUDITOR.

### (166 Pac. 931.)

**Elections—Primary Election—Nature.**

1. Under the direct provisions of Section 3350, L. O. L., a primary
election affords electors opportunity to express their choice of one
or more candidates for an office to be voted for at an ensuing election.

**Elections—"General Election."**

2. A general election is one that regularly recurs in each election
precinct of the state on a day designated by law for the selection
of officers, or is held in such entire territory pursuant to an enactment
specifying a single day for the ratification or rejection of one or
more measures submitted to the people by the legislative assembly,
and not for the election of any officer.

**Elections—"General Election"—What Constitutes.**

3. An election for ratifying legislative enactments is a general
election within Section 3322, L. O. L., as amended by Laws of 1917,
Chapter 330, providing that, where a general election for both county
and city is held on the same day, election clerks shall receive only one
fee, although one of the measures submitted (Laws 1917, c. 422 § 1),
pursuant to a phrase in Article IV, Section 1, of the Constitution,
referred to such election as special.

  [As to constitutional or statutory provisions relating to elec-
tions as applicable to primary elections, see note in Ann. Cas.
1913A, 702.]

Original proceeding in Supreme Court.

In Banc.    Statement by MR. JUSTICE MOORE.

This is an original proceeding by W. B. Bethune
against George R. Funk, as auditor of Portland, Ore-
gon, and other executive officers thereof to compel the
allowance and payment of the petitioner's claim of $3
for services rendered as a judge of election. From a
statement of the case as made it appears that pur-
suant to Section 123 of the charter of that city a gen-
eral municipal election was held therein June 4, 1917,
at which time an election was also held in the several
voting precincts of the state to determine whether or

not certain measures proposed by the legislative assembly should be ratified by the people (Gen. Laws Or. 1917, Chapters 422, 423); that election precinct No. 204 of the City of Portland is identical with election precinct of the same number in Multnomah County, Oregon; that the board of county commissioners of that county duly appointed two boards for that precinct, one to act during the day of election to receive the ballots when cast, and the other to serve at night to canvass the votes polled and make due return thereof, of which latter board the petitioner was a member; that the council of that city, pursuant to an ordinance, also duly appointed the petitioner a member of the night board of the municipal election held in that precinct; that on May 28, 1917, the board of county commissioners of Multnomah County adopted a resolution to the effect that whenever boards of election jointly acted for that county and the City of Portland, only one *per diem* compensation therefor should be made, and that when so paid by the county the city would repay one half of the sum so expended, which resolution was concurred in by the city council; that the petitioner duly accepted the appointments so made and jointly served with others as a member of the night board of election in such precinct, the ballots, ballot-box, and tally-sheets for the state election having been furnished by Multnomah County, and like supplies for the municipal election by the City of Portland; that he discharged all the duties demanded of him, for which the county paid him $3; and that he was entitled to a like sum from the city, which refused to pay any part thereof. A demurrer to the alternative writ on the ground that it does not state facts sufficient to authorize the relief demanded presents the question to be considered.        DEMURRER SUSTAINED.

For plaintiff there was a brief over the names of *Mr. George Mowry,* Deputy District Attorney, and *Mr. Walter H. Evans,* District Attorney, with an oral argument by *Mr. Mowry.*

For defendants there was a brief over the names of *Mr. Lyman E. Latourette,* Deputy City Attorney, and *Mr. Walter P. La Roche,* City Attorney, with an oral argument by *Mr. Latourette.*

MR. JUSTICE MOORE delivered the opinion of the court.

Section 3322, L. O. L., was amended by an act approved February 20, 1917 (Gen. Laws Or. 1917, Chap. 330) so as to read:

"There shall be allowed by the county court of each county to the several judges and clerks of election $3 per day while holding elections * * ; *and it is provided* that in incorporated cities and towns where a city, primary, or general election is held on the same day and within the same hours as a primary or general election under the laws of this state and the election precincts within any such city or town do not embrace territory outside of the corporate limits thereof, the judges and clerks of election shall render the required service as such judges and clerks of such city or town election without additional compensation * * ; *provided,* that incorporated cities and towns holding elections on the same day of such primary or general election, and using the services of judges and clerks, shall bear their *pro rata* expense of such election."

1. The proper meaning of the phrase "a primary or general election under the laws of this state" as thus employed must necessarily determine the controversy. A primary election is the opportunity given by law to electors enabling them to express

their choice by ballot of one or more candidates
for office to be voted for at an ensuing election: Section
3350, L. O. L. In *Marsden* v. *Harlocker,* 48 Or. 90,
94 (85 Pac. 328, 120 Am. St. Rep. 786), it is said:

"If, by operation of law, the election invariably oc-
curs at stated intervals, without any superinducing
cause, except the efflux of time, the election is general,
in which case all qualified persons are presumed to
have knowledge thereof, and hence the failure of any
officer or person upon whom the duty devolves to give
a prescribed notice does not invalidate the votes cast
thereat."

The description of a general election thus given,
though applicable to the facts there involved, is not
broad enough to include all elections that might prop-
erly come within the modifying term "general."
Article IV, Section 1 of the organic law of the state
declares:

"All elections on measures referred to the people of
the state shall be had at the biennial regular general
elections, except when the legislative assembly shall
order a special election."

The meaning of the clause, "except when the legis-
lative assembly shall order a special election," might
as well have been rendered by the expression, "except
when the legislative assembly shall otherwise order."
It was the time and not the kind of election that was
being thus distinguished. The phrase "biennial regu-
lar general election" in the excerpt last set forth would
necessarily imply, by comparison, a "special general
election," so that the qualifying word "special" has
in this instance no particular significance. The phrase
"general election" will be found in Sections 2943,
2944, 2947, and 2948, L. O. L. In referring thereto
Section 2952, L. O. L. reads:

"The general election at which such officers, or either of them, must be elected is the general election next preceding the expiration of the term of the then incumbent of such office."

Section 3303, L. O. L., was amended so as to read:

"A general election shall be held in the several election precincts in this state on the first Tuesday after the first Monday in November, 1914, and biennially thereafter. Gen. Laws Or. 1913, Chap. 288."

The Governor is required to issue writs of election to fill such vacancies as may have occurred in the legislative assembly: Article V, Section 17 of the Constitution. The statute regulating the exercise of such prerogative declares:

"The governor shall issue a writ of election, directed to the sheriff of the county, or sheriffs of the counties composing the district in which such vacancy shall occur, commanding him or them to notify the several judges of election in his county or their district to hold a special election to fill such vacancy or vacancies, at a time appointed by the governor": Section 3431, L. O. L. See also Section 3438, L. O. L.

2. A consideration of these provisions induces the conclusion that a "general election" is one that regularly recurs in each election precinct of the state on a day designated by law for the selection of officers, or is held in such entire territory pursuant to an enactment specifying a single day for the ratification or rejection of one or more measures submitted to the people by the legislative assembly, and not for the election of any officer.

3. Section 1 of Chapter 422, Gen. Laws Or. 1917, conforming to a statement contained in Article IV, Section 1 of the Constitution of this state, declares:

"A special election shall be held in the several voting precincts of this state on the forth (fourth) day of June, 1917."

The use of the qualifying word "special" as thus indicated did not make the election so to ·be held of that kind, for the election having been simultaneously held in every voting precinct of the state conclusively establishes the fact that the election was general and not special, which latter term, though not involved herein would appear to mean an election held in only a subdivision or a part of the state. Such being the case Chapter 330, .Gen. Laws Or. 1917, is controlling, and the petitioner herein having been paid by Multnomah County for the services which he performed is not entitled to any further remuneration from the City of Portland or its executive officers.

It follows from these considerations that the alternative writ does not state facts sufficient to authorize the relief demanded, the demurrer thereto is sustained, and the proceeding is dismissed.

DEMURRER SUSTAINED.     PROCEEDING DISMISSED.

MR. JUSTICE BURNETT not sitting.