WASSON v. MARTIN.

4-3657

Opinion delivered January 28, 1935.

*McDaniel & McCray, House, Moses & Holmes, A. C. Thomas, Jno. L. McClellan* and *W. R. Donham,* for appellant.

*C. T. Cotham, J. B. Milham* and *Tom W. Campbell,* for appellees.

HUMPHREYS, J.    This suit was filed August 2, 1933, by appellant against appellees to cancel as fraudulent a deed of the date of August 29, 1931, from A. V. Martin to his wife, Hattie H. Martin, conveying all his real and personal property in Saline County, Arkansas. It was alleged that the deed was without consideration and executed for the purpose and with the fraudulent intent to defeat the claims and judgments of appellant in the total sum of $46,075.

Appellees filed an answer denying that the conveyance was without consideration and made with a fraudulent intent to defeat the claims and judgments of appellant.

Upon a trial of the case the chancellor found and decreed that the deed was executed in good faith for a valuable consideration, and dismissed appellant's complaint for want of equity, from which is this appeal.

The record in the case reflects the following facts material to a determination of the issues involved. The Benton Trust Company was a corporation duly organized on the 4th day of December, 1930, being capitalized at $55,000, $50,000 capital and $5,000 surplus. The organizers and stockholders were A. V. Martin and four associates. Stock in the sum of $6,625 was issued to A. V. Martin. In order to organize said bank, Martin and his associates borrowed $39,550 from the Union Trust Company of Little Rock, and deposited same with other amounts in the total sum of $55,000 in the name of the Benton Trust Company in the Union Trust Company and presented this certificate of deposit to the Bank Commissioner in order to obtain a charter for the Benton Trust Company to do business as a bank. A few days after obtaining the charter and opening for business in the city of Benton, Arkansas, A. V. Martin and his associates used $39,550 of the money deposited in the Union Trust Company to pay individual indebtedness to said Union Trust Company for the money they borrowed to organize the Benton Trust Company and never returned the money thus misappropriated to the Benton Trust Company. The organizers and stockholders were elected directors, and in addition A. V. Martin was elected the president of the Benton Trust Company, and he and the other directors conducted the affairs of the Benton Trust Company until the 30th day of December, 1931, when the Bank Commissioner took the institution over as insolvent and began to wind up its affairs. The Bank Commissioner sued Martin and his associates for the money, $39,550, belonging to the Benton Trust Company which they had used immediately after its organization to pay their individual indebtedness to the Union Trust Company, in which suit he obtained a judgment for said amount against them on June 1, 1933, on the ground that appellees had unlawfully and wrongfully converted to their own use funds in said sum belonging to the

Benton Trust Company. For a full and complete statement of the facts relative to this phase of the instant case, reference is made to the case of *Martin* v. *Taylor*, 188 Ark. 114, 65 S. W. (2d) 4. The Bank Commissioner also made an assessment of 100 per cent. against A. V. Martin which amounts to $6,625 and obtained a judgment against him in said amount on the first day of June, 1933. The deed sought to be canceled was not recorded until June 11, 1933, more than a month after the rendition of the judgments against him. The conveyance by Martin to his wife of all his property rendered him wholly insolvent, leaving nothing on which execution could be levied to satisfy said judgments. The deed in question was a quitclaim deed and recited a consideration of one dollar. The real consideration, as reflected by the evidence introduced by appellees, was an oral promise on the part of A. V. Martin in 1926 made to his wife that, inasmuch as he had made their children beneficiaries in his life insurance policies amounting to $25,000, he would later convey all his property by deed to her.

The first question arising for determination on this appeal in the trial of the case *de novo* is whether the deed was a voluntary conveyance or whether it was supported by a valuable consideration.

The oral promise by Martin to convey all his property at some future time to his wife in lieu of making her the beneficiary in his life insurance policies is not in any sense a legal obligation and at most could only be characterized as a moral obligation. The conveyance made in 1931 to redeem his oral promise made in 1926 and which conveyance was withheld from record until 1933 could hardly be regarded as a moral obligation, much less a legal one. The court is of opinion therefore that the instrument was wholly and entirely voluntary.

The next question arising is whether, being a voluntary conveyance, it was and is void. The effect of the conveyance was to render Martin insolvent and execution proof. At the time the deed was executed Martin owed the Benton Trust Company $39,550 for money he and others had wrongfully and unlawfully converted to their own use, and at the time knew he would be subjected

to the payment of a 100 per cent. stock assessment in the sum of $6,625, when the bank would be taken over for liquidation. He could not have been ignorant of the fact that the bank would fail because he knew that he and his associates wrongfully converted $39,550 of the liquid assets of the bank to their individual use. It was a blow no bank could survive with only $55,000 capital stock in times of financial depression, and, in this particular instance, it caused the financial wreck of the Benton Trust Company within one year after its organization. In 12 Ruling Case Law, p. 592, it is said: "The claims of creditors rest on legal obligations, higher than the demands of affections or generosity, and a man must be just before he is generous."

The point is made that Mrs. Hattie H. Martin knew nothing of the intent with which her husband made the deed to her, but this court is committed to the rule that: "To avoid a fraudulent conveyance of a debtor, proof of the grantee's participation in the fraud is not necessary where the grantee is a voluntary donee." *Reeves* v. *Sherwood,* 45 Ark. 520; *Hershey* v. *Lathem,* 46 Ark. 542.

Based upon the record in this case, the chancellor should have canceled the deed, so the judgment dismissing appellant's complaint is reversed, and the cause is remanded with directions to the chancery court to cancel the deed, and to subject the property therein described or so much thereof as may be necessary to the payment of appellant's judgment.