MORGAN *v.* HATTENDORF.

4-7937                    196 S. W. 2d 997; 197 S. W. 2d 477

Opinion delivered October 14, 1946.

Rehearing denied November 18, 1946.

*James A. Plotner,* for appellant.

*Price Shofner,* for appellee.

GRIFFIN SMITH, Chief Justice. In street vernacular it might be said that the parties litigating have commuted between Probate, Chancery and Circuit Courts in a man-

ner disclosing diligence and legal finesse entirely conso-
nant with the respective purposes of winning a decison.

As an example of conflict in jurisdiction, the appeal
is from action of the Chancery Court in denying the plain-
tiff's prayer in an ejectment suit filed in Circuit Court.

Evaline Morgan, colored, died when about ninety
years of age. In 1902 she purchased the real property
which is the subject matter of this controversy, and con-
tinued to own it. In April, 1944, C. L. Kraft was
appointed guardian of the person and [curator of] the
estate of Evaline when she had become mentally incom-
petent. James L. Morgan was Evaline's stepson, and
together they occupied a residence on the property. It
was mortgaged to a bank to secure an indebtedness of
more than $600, with interest. In July following his
appointment Kraft petitioned for a probate order direct-
ing sale of Evaline's equity, alleging she was then an
inmate of an institution where room, board, and certain
benefits were provided, but "[she is not being supplied
with] clothing and other things necessary for her well-
being." The prayer was that sale be authorized under
Act 402 of 1941. The property brought $1,125, of which
$435.12 was paid to the guardian by Hattendorf. No
appeal was taken from the judgment. September 20th
Hattendorf gave Morgan notice to vacate, and upon his
refusal suit in unlawful detainer was filed. October 11
the sale was confirmed,[1] a judgment recital being that
the proceedings were according to law "and that the facts
set forth in the petition for sale entitled the guardian
to make said sale."

On Morgan's motion the cause was transferred to
Chancery. Morgan was in possession. It was stipulated
that appellant was not a party to the guardian's suit.
Other points of agreement are (a) that Evaline had
promised to will the property to her stepson in considera-
tion of support; (b) that the cause was heard by Chan-
cery ". . . and rights of the parties to the property
were tried by that court"; (c) questions submitted in-
cluded Morgan's contention that he was entitled to vacate

---

[1] The order directing sale was made at the April term, and the
judgment of confirmation was at the October term.

former judgments on the ground of Evaline's agreement to make the will.

April 18, 1945, the Court found that Morgan had breached his contract to support Evaline, and therefore had no interest in the estate. The decree states that testimony on this issue was heard, reflecting contentions of each side.

Within a few weeks after this decree was rendered Evaline died. Time for appealing expired in October. June 20, nearly four months before the appeal period had terminated, Morgan probated a will executed by Evaline, in which the property was devised to him. This action was not challenged, and that record stands.

Upon the one hand, it is insisted that Morgan's property rights became final under the will, while on the other hand it is urged that his interest in the subject matter was adjudicated by the decree wherein it was found that consideration for the will had failed.

*First—Hattendorf's Rights.*—Appellee bought at a guardian's sale regular on its face. The judgment of confirmation contained recitals which, if true, gave the Court jurisdiction. But, as it is now urged, the agreed statement shows the sale was not advertised as provided by law, hence the judgment is void and the transaction may be collaterally attacked. Our view is that the sale comes within the rule announced in *Day* v. *Johnston*, 158 Ark. 478, 250 S. W. 532. See also *Collins* v. *Harris*, 167 Ark. 372, 267 S. W. 781; *Alexander* v. *Stack*, 172 Ark. 530, 289 S. W. 484; *Roberts* v. *Miller*, 173 Ark. 38, 291 S. W. 814; *Hart* v. *Wimberly*, 173 Ark. 1083, 296 S. W. 39; *Sullivan* v. *Times Publishing Co.*, 181 Ark. 27, 24 S. W. 2d 865; *Dodd* v. *Hopper*, 182 Ark. 24, 30 S. W. 2d 837; *Swindle* v. *Rogers*, 188 Ark. 503, 66 S. W. 2d 630; *Levinson* v. *Treadway*, 190 Ark. 201, 78 S. W. 2d 59; *Jordan* v. *The Midland Savings & Loan Co. of Denver, Colorado*, 193 Ark. 313, 99 S. W. 2d 260; *Tuchfeld* v. *Hamilton*, 203 Ark. 428, 156 S. W. 2d 887; *Fisher* v. *Cowan*, 205 Ark. 722, 170 S. W. 2d 603.

In the Day-Johnson case Act 263 of 1919, now Pope's Digest, § 6257, was discussed. After tracing the law's

course subsequent to 1891, the opinion says: "In short, the decision of *Apel* v. *Kelsey,* 52 Ark. 341, 12 S. W. 703, 20 Am. St. Rep. 183, is re-enacted as to those probate court judgments which contain the recitals that the court authorized and ordered the sale, that the guardian or administrator was duly and legally appointed and qualified, that the sale was conducted according to law, and that the facts set forth in the petition entitled the guardian or administrator to make the sale; and, this being true, private sales made under the orders of the court are not void when confirmed, and are subject to attack only on direct appeal . . . save for fraud or duress, as provided in this Act of 1919."

*Hart* v. *Wimberly* deals with a minor's rights in respect of homestead and it is not in conflict with *Day* v. *Johnston* because in Hart's case power of the Legislature to authorize sale of such homestead to pay debts was held to be in conflict with Art. 9, §§ 6 and 10, of the Constitution of 1874.

*Day* v. *Johnston* is cited in *Swindle* v. *Rogers* to support the holding that validity of the appointment of a guardian may not be collaterally attacked; and, in *Levinson* v. *Treadway*, Mr. Justice MEHAFFY said: "The probate court is a court of superior jurisdiction, and, when acting within its jurisdictional rights, its judgments are not open to collateral attack, if they contain the proper recitals and were not procured by fraud; but, if they show on their face that the statute was not complied with, or [if] it is shown that the judgment was procured by fraud or duress, they are open to collateral attack."

In *Tuchfield* v. *Hamilton* reason for the *Day* v. *Johnson* rule is discussed, the comment being: "This Act [of 1919] was intended to give assurance that one might acquire a good title at a probate sale, to the end that estates would not be sacrificed where their sale was required and had been ordered."

There is no suggestion of fraud, duress, or collusion in connection with the sale to Hattendorf. The only objection is that it was not advertised—a fact admitted by the stipulation. But it is not shown that Hattendorf knew of

this defect, nor was he required to inquire beyond court records to determine if his purchase would be legal.

*Second — Morgan's Position.* — When the probate court ordered a sale of the land, the guardian's ward was living. Morgan was not a necessary party; but, irrespective of this, he submitted his contentions to a court of equity and the decree was that he had not fulfilled the agreement to support Evaline. In fact, she was then in an institution at public expense—the county hospital. It is agreed that the will actually made in 1939 and subquently probated was pursuant to the same promise he set up in the Chancery case. Before the will could have become effective through death of the testatrix, she became insane, and there was a judicial finding that consideration had failed. There was no period of sanity during which Evaline could have revoked or destroyed the will. We think a complete answer to the fact that the will *was* probated is that the issue of Morgan's right to the property was adjudicated before the so-called devise became effective, *prima facie,* through Evaline's death.

Affirmed.

Mr. Justice McFADDIN was absent and did not participate in the consideration or determination of this case.

----

GRIFFIN SMITH, Chief Justice (on rehearing). It is argued by appellant that the Court overlooked Act 402 of 1941. The statute was considered, but the result was not affected by reason of it. Although the parties agreed that proceedings were brought under the Act's terms, a mistake as to what law applied would not be of consequence if the Court had jurisdiction and proceeded by virtue of appropriate legislation.

Act 402 is entitled, ''An Act providing for the sale of dower, curtesy and homestead rights and interest belonging to minors or persons of unsound mind and for other purposes''. It was introduced as House Bill 228, but was amended by eliminating minors. Through error

500

the words "to minors" were not taken from the title. Although the rule is that when the meaning of an Act is in doubt the title may be looked to as an aid in determining the legislative intent, yet where, as here, the measure as finally adopted carried an amendment striking the word "minors" from the text, there is nothing to construe. The error is mentioned in order that lawyers who do not have access to official records of the General Assembly may have the information.