GLOVER *v.* HENRY.

5-2020                                                   328 S. W. 2d 382

Opinion delivered November 2, 1959.

**112**

*Warren & Bullion,* for appellant.

*Frank Holt,* Prosecuting Attorney, *Bruce Bennett,* Atty. General, *Howard Cockrill, Herschel H. Friday, Jr.,* for appellee.

GEORGE ROSE SMITH, J.   This is a suit by the appellant, as a taxpayer and school teacher, for a declaratory judgment fixing the interpretation to be placed upon two recent statutes affecting the public schools, Act 248 of 1959 and Act 9 of the 1958 special session. The appellees, the members of the County Board of Election Commissioners and of the Little Rock School Board, reduced the issues to questions of law by demurring to the complaint.   The chancellor entered   a decree construing both statutes in a manner contrary to the plaintiff's contentions, and she has appealed.

The controversy as to Act 248 may be disposed of in two paragraphs.   The title states that this act is to require that the annual school election be held on the last Saturday in September, but the body of the act provides that the election is to be held on the first Tuesday in December.   The legislative journals show that the conflict arose in this way:   The act was introduced as a Senate bill to change the election date to the last Saturday in September.   Senate Journal of 1959, p. 70. The House, without changing the title, amended the text of the bill to fix the date as the first Tuesday in December.   House Journal, p. 868.   The Senate concurred in the amendment, Senate Journal, p. 1667, and thus the bill as approved by both houses contained the variance between title and text.

The appellant contends that this conflict renders the act void and hence leaves the election date to be determined by prior laws.   The chancellor was right in rejecting this contention.   The title of an act may be considered in arriving at the legislative intention, but the title "is still no part of the act and is not controlling in its construction." *Special School Dist. No. 33* v. *Howard,* 124 Ark. 475, 187 S. W. 444.   We have accordingly held, in a case closely similar to this one, that

it is necessary to disregard words in the title which the legislature neglected to change when the corresponding language in the body of the measure was deleted by amendment. *Morgan* v. *Hattendorf,* 210 Ark. 495, 197 S. W. 2d 477. That principle is controlling in the case at bar; the chancellor's construction of Act 248 is therefore affirmed.

The remaining issues arise under Act 9 of the 1958 special session. The parties have not questioned the constitutionality of this act, and ordinarily we would not consider that issue, in view of the familiar rule that points not properly raised are deemed to have been waived. *Campbell* v. *Beaver Bayou Dr. Dist.,* 215 Ark. 187, 219 S. W. 2d 934; *Latham* v. *Hudson,* 226 Ark. 673, 292 S. W. 2d 252. Here, however, the appellant in her capacity as a taxpayer represents the general public, and we have recognized the fact that persons acting in a representative capacity do not have an unlimited right to control the litigation, as is normally true in purely private cases. *Pafford* v. *Hall,* 217 Ark. 734, 233 S. W. 2d 72. Since the validity of Act 9 is undoubtedly a matter of public interest we deem it better to express our view on this point than to leave this important question open to doubt.

Act 9 establishes a procedure for the recall of school directors and provides in § 8 that vacancies created under the act are to be filled by the county board of education. The constitutional question is whether the vesting of the appointive power in the county board of education rather than in the governor violates this language in constitutional amendment No. 29: "Vacancies in the office of United States Senator, and in all elective state, district, circuit, county, and township offices except those of Lieutenant Governor, Member of the General Assembly and Representative in Congress of the United States, shall be filled by appointment by the Governor."

The difficulty is that of determining the scope of the word "district" in the enumeration of elective officers. It is obvious that the word was intended to refer

to the offices of prosecuting attorney and chancellor, for their districts fall between the state and the county in geographical area, and the word district is so placed in the enumeration. The question is whether the term "district" was chosen not only as a means of referring to prosecuting attorneys and chancellors but also as a means of referring to school directors, who are elected by school districts.

Our study of the amendment convinces us that there can be no reasonable doubt of the fact that school directors do not come within the scope of the amendment. No less than three pertinent considerations point compellingly to this conclusion.

First, a familiar and sensible rule of constitutional interpretation requires that the word district be read in the light of its context. The amendment refers to all elective state, district, circuit, county, and township offices. This enumeration, extending from the state constitutional officers down to the township justice of the peace, encompasses those public officers who are mentioned elsewhere in the constitution and who exercise in some measure the state's governmental powers. The office of school director does not fit at all harmoniously into the enumeration. This office is not a part of the constitutional scheme. It is a subordinate administrative position, created by statute only, and exercises only the limited powers possessed by the school district. See *Schmutz* v. *Special Sch. Dist. of Little Rock,* 78 Ark. 118, 95 S. W. 438. It is not reasonable to suppose that the word district was selected for the purpose of bringing into the enumeration an office that differs sharply from all the others listed.

Secondly, § 4 of Amendment 29 contemplates that the successors to the governor's appointees will be elected at the general election and will take office on the following January first. The constitution has always provided that elective state, district, circuit, county, and township officers be elected at the general election, Schedule, § 3, and Art. 3, § 8; so Amendment 29 creates a workable plan for filling vacancies in these offices.

On the other hand, school directors have never been elected at the general election. From 1875 to 1931 they were selected at an annual meeting of the patrons of the district, held on the third Saturday in May. C. & M. Dig., § 8909. By Act 169 of 1931, § 81, the date was changed to the first Tuesday in March, and by Act 30 of 1935, § 3, which was in force when Amendment 29 was adopted, the school election date was fixed as the third Saturday in March. It is wholly impossible to apply the provisions of § 4 of Amendment 29 to the office of school director, owing to the fact that the school board members are not selected at the general election.

Thirdly, in construing a constitutional amendment it is helpful to determine what changes the amendment was intended to make in the existing law. *Bradley* v. *Hall,* 220 Ark. 925, 251 S. W. 2d 470. Amendment 29 provides that the governor shall fill vacancies in the office of United States senator and in all elective state, district, circuit, county, and township offices except lieutenant governor, member of the legislature, and member of Congress. It is significant that these provisions made no substantial change in the law as it already existed, for the governor had the power to fill vacancies in the office of United States senator (Pope's Dig., § 11807) and in the designated elective offices (Const., Art. 6, § 23) with the exception of the lieutenant governor (Amendment 6, § 5), member of the legislature (Const., Art. 5, § 6), and member of Congress (Pope's Dig., § 4676). Thus the purpose of Amendment 29 was not to create a new appointive power in the chief executive; it was to reaffirm the existing law as a basis for the operation of the other provisions in the amendment. Vacancies upon school boards were not filled by the governor when the amendment was adopted, Pope's Dig. § 11524, and we find it impossible to believe that the word district was inserted in the amendment for the purpose of creating a new power of appointment pertaining to school directors only. Had that been the intention of the draftsman he could easily have inserted the phrase ''school district'' in the enumeration, be-

tween county and township. The absence of any such reference to school districts convinces us that they were not meant to come within the scope of the amendment.

Turning from the constitutional question the other issue is that of determining whether, under Act 9, a person appointed to succeed a recalled school board member serves (a) for the entire unexpired term of the recalled member or (b) only until the next regular annual school election. The chancellor adopted the latter view.

The pertinent facts are recited in the complaint and admitted by the demurrer. In the spring of 1959 three of the six members of the Little Rock School Board were recalled at a special election conducted under the provisions of Act 9. In accordance with the act Mackey was appointed to succeed one recalled member, Rowland, whose term would have expired in 1959; McDonald was appointed to succeed another recalled member, Laster, whose term would have expired in 1960; and Cottrell was appointed to succeed the third recalled member, McKinley, whose term would have expired in 1961. Upon the first branch of this case we have already held that a school election must be held on the first Tuesday in December of 1959. It is conceded that a successor to Mackey must be chosen at that election, for the unexpired term being filled by Mackey expires in 1959. The disputed question is whether the other two appointees are to remain in office until the expiration of their predecessors' terms or only until the positions can be filled by popular vote at the annual school election. The answer to this question must be found in the provisions of Act 9.

This act (with a minor amendment contained in Act 19 of 1959) is the only statute having to do with the recall of school board members. The first six sections of the act establish a procedure by which the electors of any school district may petition for an election to determine whether one or more school board members are to be recalled by majority vote. The act provides for the appointment of persons to succeed recalled board mem-

bers, but it contains no explicit language governing the duration of the appointee's term of office. The solution to that inquiry must be discovered in these three sections of the act:

"Section 7. In the event that a majority of the qualified electors voting at the election shall vote in favor of removing the subject school board member or members, a vacancy or vacancies are hereby declared to exist.

"Section 8. Vacancies occurring under the provisions of this act shall be filled by the County Board of Education. Not more than one election for recall shall be held under the provisions hereof in any one school year. Persons appointed to fill the vacancies hereunder may also be recalled under the provisions of this act.

"Section 9. All laws and parts of laws in conflict herewith are hereby repealed except Act 30, Ark. Acts of 1935, § 4 (Ark. Stats. (1947) § 80-504), pertaining to vacancies occurring other than under the terms of this act."

After studying the act carefully and long we are of the opinion that § 8 contains the only clear and reliable guide to the legislative intention. That is the only section in which the lawmakers turned their attention to the matter of filling vacancies created by a recall election. On that subject two pertinent, unequivocal declarations are made: First, not more than one recall election shall be held in any one school year. Secondly, persons appointed to fill vacancies arising under the act may also be recalled under its provisions.

It can be demonstrated with complete certainty that the second declaration becomes completely meaningless if an appointee is to serve only until the next annual school election. Since only one recall election can be held within a year, it follows that an appointee must serve for more than a year in order to be subject to recall, as the act declares him to be. But, if we adopt the appellees' contention that an appointee serves only

until the next annual school election, it would be impossible for any appointee ever to serve more than a year and thus be subject to recall, for an annual school election must always be held within a year after the first recall election. Hence the legislative assertion that appointees are subject to recall becomes mere surplusage under the appellees' construction of the act.

On the other hand, the provision is meaningful and effective if the view is taken that an appointed board member serves until the end of his predecessor's term. It is a familiar rule of law that we must, if possible, give effect to *all* the language that the legislature sees fit to insert in a statute. We are not at liberty to reduce any section or sentence to a nullity if some meaning and some effect can be given to the wording of the law. *Cypress Creek Dr. Dist.* v. *Wolfe,* 109 Ark. 60, 158 S. W. 960. Unless we are to strike out, arbitrarily, the legislature's explicit command that appointees are subject to recall under the terms of the act, there is no logical or defensible basis for saying that the lawmakers did not intend for such appointees to serve beyond the date of the next annual school election.

The appellees, tacitly conceding the force of the appellant's argument under § 8 of the act, suggest that a contrary legislative intention may be found in § 9. That section provides that all laws conflicting with Act 9 are repealed, with the exception of § 4 of Act 30 of 1935, "pertaining to vacancies occurring other than under the terms of this act." The cited section of the 1935 statute provides, with respect to school boards in general, that vacancies shall be filled by the remaining directors or, in certain cases, by the county judge, and that all directors so appointed shall serve only until the next annual school election.

We are unable to find, in the legislature's reference to the 1935 statute, any indication that its provisions were being embodied in the 1958 law; indeed, counsel frankly concede that this interpretation can be reached only if one strikes out some of the words in § 9 and substitutes others of his own choosing. No principle

of statutory construction calls for that action on our part. Section 9 of the act, as worded by the legislature, has a meaning not difficult to ascertain. The lawmakers evidently believed that the 1935 act should be expressly protected against the possibility of an implied repeal — a possibility that came about because Act 9 provided a new and different method for filling vacancies on the school board. But in preserving the older law the legislature took occasion to point out that it pertained "to vacancies occurring *other than* under the terms of" Act 9. To say that the 1935 statute applies to vacancies arising under Act 9 would be to proceed in the teeth of the lawmakers' express declaration to the contrary.

With respect to Act 9 the decree is reversed and the cause remanded with directions to overrule the appellees' demurrer.

JOHNSON, J., dissents.

JIM JOHNSON, Associate Justice, dissenting. This case involves two separate and distinct points of law. The first point was obviously raised to divert attention from the second point which is the gravaman of this lawsuit. Certainly I agree with the majority opinion relative to point one.

Point two urged by appellant for reversal is as follows:

"The lower court erred in holding that persons appointed to serve on the school boards, to fill vacancies created as the result of recall, pursuant to Act 9 of 1958, Acts of Arkansas, were appointed to serve only until the next annual school election, at which time the unexpired terms of the recalled members would be filled."

The trial court adopted the view that under Act 9 a person appointed to succeed a recalled school board member serves only until the next regular annual school election, thereby sustaining the demurrer filed by appellees. I am convinced that the demurrer should

have been sustained but not for the reasons given by the Chancellor. We have said many times that we would not disturb a decree in Chancery if the results reached, even though based on incorrect reasons, corresponded with the result reached by us on trial *de novo*. *Martin* v. *Taylor,* 188 Ark. 114, 65 S. W. 2d 4. The Chancellor based his ruling on § 8 and an exception contained in § 9 of Act 9 of the 1958 Special Session of the Legislature. This dissent is based not on the terms of the Act but upon the crystal clear language of the Constitution of the State of Arkansas.

It is true that the constitutionality of Act 9 was not raised in the trial court nor was it argued in the briefs. In fact, appellees came very near confessing judgment in this case. The last time we were called upon to render a decision in a case involving a matter of such public interest, wherein it was obvious from the briefs that all parties to the lawsuit wanted the same result, we invited all attorneys in Arkansas, who were interested in the question involved, to file briefs *amici curiae*. See: *Andres* v. *First Arkansas Development Corp.,* ......... Ark. ........, 324 S. W. 2d 97. This same procedure should have been followed in this case. I am confident that had such procedure been followed, it would have been helpful in preventing the majority from interpreting the constitution according to their notion of what the constitution ought to say rather than what its language clearly provides.

I am acutely aware of the long standing rule that this Court will not pass upon a constitutional question unless necessary for disposition of the pending cause. *Dept. of Public Utilities* v. *Ark. La. Gas Co.,* 194 Ark. 354, 108 S. W. 2d 586. Certainly it is necessary to the disposition of this cause to rule on the constitutionality of Act 9 since § 8 of the Act is diametrically opposed to § 1 of Amendment 29 of the Constitution of the State of Arkansas.

Section 8 of Act 9 is as follows:

"Vacancies occurring under the provisions of this act shall be filled by the County Board of Education.

Not more than one election for recall shall be held under the provisions hereof in any one school year. Persons appointed to fill the vacancies hereunder may also be recalled under the provisions of this act."

Section 1 of Amendment 29 is as follows:

"Vacancies in the office of United States Senator, and in *all elective* state, *district*, circuit, county, and township offices except those of Lieutenant Governor, Member of the General Assembly and Representative in the Congress of the United States, shall be filled by appointment by the Governor." (Emphasis supplied).

It is obvious that these two sections cannot be reconciled. This being true, then the Constitution must prevail. The majority opinion contends that § 1 of Amendment 29 does not apply to school districts. My research reveals that Amendment 29 was initiated by the people and approved at the General Election November 8, 1938; that there was in existence at the time of the adoption of this Amendment an Act of the Legislature, Act 30 of 1935, which provided a method for filling all vacancies occurring on school boards contrary to Amendment 29; that the boards have consistently followed Act 30 since the adoption of this Amendment and that the method of selection has remained unchanged until the adoption of § 8 of Act 9 of 1958; that this Court has never had occasion to pass on the constitutionality of either of these acts until the appeal of the case at bar. Does the fact that school boards have ignored Amendment 29 exempt them from its application? My research fails to reveal one single precedent where this Court has held that an Act of the Legislature, which is clearly contrary to a constitutional provision, should be held valid simply because certain persons failed or refused to follow the law. It is unthinkable that the majority should now at this late date so hold.

What is a district? Webster defines the word "district" as a defined portion of the state. Can the majority say that a school district is not a defined portion of the State? C. J. S. Vol. 27, page 617 defines "dis-

trict" as follows: "In its ordinary meaning the word is commonly and properly used to designate any one of the various divisions or subdivisions into which the State is divided for political or other purposes, and may refer either to a congressional, judicial, senatorial, representative, *school,* or road district, depending always on the connection in which it is used . . ." (Emphasis supplied). Can the majority say that a school district is not a political subdivision of the state which enjoys the privileges and immunities as such? Every other Supreme Court in the United States that has ruled on this question, that I have been able to find, says that a school district is a political subdivision of the State. See: Vol. 26, Sec. II B, Key 21, page 1340, Sixth Decennial Digest. The Supreme Court of New York in *Nassau County* v. *Lincer,* 165 Misc. 909, 3 N.Y. S. 2d 327, page 334, said that: "School districts are, like counties, governmental subdivisions of the state, though their governmental function is confined to education." The Supreme Court of Florida in *State* v. *Special Tax School District No. 5 of Dade County,* 144 So. 356, held that where a constitutional amendment authorized issuance of refunding bonds by *counties, municipalities,* and *districts,* the word "district" included school districts. The Supreme Court of Nebraska in *State ex rel Gordon* v. *Moores et al.,* 96 N. W. 1011, in interpreting the following language in their constitution, "all state, district, county, precinct, and township officers, by the Constitution or laws made elective by the people, except school district officers, and municipal officers in cities, villages and towns, shall be elected at a general election to be held as aforesaid," had this to say: "It would seem that the word 'district' as used in the Constitution in reference to general elections, must refer as well to districts created by the Legislature as those provided for in the Constitution, because it excepts specially 'school district officers,' thus mentioning a district that must be created by the Legislature, *but which would be included in the requirement unless so specially excepted."* (Emphasis supplied).

Unlike the Nebraska Constitution, our Constitution does not except school districts. There are, however, other exceptions in the amendment and it is reasonable to believe that if the people had meant to make further exceptions they would have done so. The majority opinion, in effect, says that because of the sequence in which the word "district" appears in the amendment that its meaning changes according to the position it holds in the same sentence.

I have been unable to find one single opinion in the history of recorded cases from any jurisdiction so holding, nor was the majority able to supply one. All of the decisions are to the contrary. See: *State ex rel Gordon* v. *Moores et al, supra.* It is a well settled rule of construction that where words or a group of words have received a judicial interpretation, it is presumed that they are used in the light of the interpretation placed upon them. *Glover* v. *Hot Springs Kennel Club,* 230 Ark. ........, 323 S. W. 2d 902.

The majority says that a school district office is not a part of the constitutional scheme. Obviously they must have overlooked Amendment 40 to the Constitution, and as to school districts Art. 14, § 3, and Amendment 11. In fact, the office is so much a part of the constitutional scheme that the framers of the Constitution found it necessary to add a special constitutional provision, Art. 19, § 26, allowing them to hold executive or judicial offices at the same time they were holding a public school office. To the majority, the office of school director may be merely a subordinate administrative position, but to me they hold one of the most important positions in government. Not only do we place under their supervision our most treasured possession (our children) but we entrust them with the expenditure of more public money than is expended by any other political subdivision of the State. I will admit that school districts are created by statute, however, it must be admitted by the majority that the districts of the two offices they contend Amendment 29 applies to are also created by statute.

Let's assume that the Legislature had made the office of Commissioner of Education an elective state office, the same to be filled at the following school election. John Doe was elected. Two months after assuming office he dies. Would the majority say that the vacancy could not be filled by the Governor under Amendment 29? The amendment says: "all elective state, district, circuit, county, and township offices . . ." *Not* all elective state, district, circuit, county, and township offices *created by the Constitution.* Since prosecuting attorneys and chancellors are paid by the State and participate in the State Retirement Act, it seems to me much more logical to say that the offices of prosecuting attorney and chancellor are state offices and not district offices than it is to say that a school director is not a district office.

It is true that § 4 of Amendment 29 contemplates that the successors to the Governor's appointees will be elected at the general election and will take office on the following January first. Point one of the present opinion with which I agree affirms the date of the annual school election to be on the first Tuesday in December. Section 80-505, which was Act 30 of 1935, provides:

"Each school director elected or appointed shall, within ten (10) days after receiving notice of his election or appointment subscribe to the following oath * * *

"The County Clerk upon receipt of oath prescribed for school director, shall immediately commission such persons and they shall enter at once upon their duties as school directors."

From the date of the election, the time required for the certification of the votes, the sending and receiving of the notice of election, the preparation and filing of the oath, and the preparation and delivery of the commission, could easily consume a great part of one month. If it should not, the greatest span of time possible between the election and assuming office under

the above statute would be less than 30 days. The majority is grabbing at straws when it cites this as an excuse for not yielding to the clear terms of the Constitution; particularly is this true since the variance in the time of assuming office would only occur in cases of elections following the filling of vacancies by appointment. The same variance of time, for example, would occur in an election following the appointment of a Secretary of State, State Auditor, State Treasurer, or Attorney General, since neither of them assume office on January 1st. Certainly the Constitution must prevail.

The majority says that "The Constitution has always provided that elective state, district, circuit, county, and township officers be elected at the general election and cites Schedule, § 3, Art. 3, § 8, as authority for such statement. Schedule, § 3, says absolutely nothing about general elections and Art. 3, § 8, simply gives the Legislature the authority to fix the time of general elections. The Legislature has exercised this authority many times. It has set some general elections on odd number of years. See: *Laster* v. *Pruniski*, 228 Ark. 132, 306 S. W. 2d 123; some on even number of years. See § 3-802, Ark. Stats.; and some, such as school elections, every year. A general election is one that regularly recurs in each election precinct of the state on a day designated by law. *Bethune* v. *Funk*, 166 P. 931, 85 Ore. 246. Since school elections under Ark. Stats. regularly recur in each election precinct of this state on a day designated by law, the annual school election is a general election.

I agree with the majority when they say that "in construing a constitutional amendment it is helpful to determine what changes the amendment was intended to make in the existing law. *Bradley* v. *Hall*, 220 Ark. 925, 251 S. W. 2d 470." However, I sharply disagree with them when they say, in effect, that no changes were made; that Amendment 29 was passed simply to reaffirm powers that the Governor already possessed in order that other powers he possessed might be changed a bit. If the majority view is correct in this matter,

then there was no need for the greater portion of Amendment 29. Having personally sponsored two proposed constitutional amendments by initiative petitions, as Amendment 29 was sponsored, I find it hard to believe that the people who circulated the petitions to get it on the ballot were working just for the exercise. From what I have said above, the only rational conclusion that I can reach is that a school board member under Arkansas law is an elected district officer within the clear terms of § 1 of Amendment 29.

Act 9 has a separability clause, construing it liberally as we must in favor of effectuating its purpose. It is our duty to strike the invalid portions of the Act and allow the other portions to stand. *Cotham* v. *Coffman*, 111 Ark. 108, 163 S. W. 1183. Therefore, I would hold that Section 8 of Act 9 of 1958 is unconstitutional and must fall in its entirety; that the exception in § 9 relative to Act 30, Ark. Acts of 1935, must fall because of its unconstitutionality. Following this action I would declare that the remaining portions of Act 9 of 1958 are valid and constitutional. The balance of this Act would be far from meaningless since § 4 of Amendment 29 would supply the machinery to make the application of the remaining portions of the Act complete and whole.

Section 4 of Amendment 29 is as follows:

"The appointee shall serve during the entire unexpired term in the office in which the vacancy occurs if such office would in regular course be filled at the next General Election if no vacancy had occurred. If such office would not in regular course be filled at such next general election the vacancy shall be filled as follows: At the next General Election, if the vacancy occurs four months or more prior thereto, and at the second General Election after the vacancy occurs if the vacancy occurs less than four months before the next General Election after it occurs. The person so elected shall take office on the 1st day of January following his election."

In construing § 4 of Amendment 29 relative to the case at bar, I would declare that the 1st Tuesday in December is the date of the next General School Election. See: *Laster* v. *Pruniski, supra.*

I would further declare that the present appointees serving on the Little Rock School Board are *de facto* officers serving only until replaced by valid appointees of the Governor; that since the span of time between such gubernatorial appointment and the next General School Election would be less than four months, such appointees, except the one filling the position the term of which expires this year, would serve until the second General School Election following their appointment.

In addition to the fact that I am convinced that appellant is not a proper party in interest to bring this action under our declaratory judgment statutes,[1] which point *also* was not argued by appellee, I respectfully dissent.

[1] See *Micklish* v. *Grand Lodge of the Loyal Star*, 162 Ark. 71, 87 A.L.R. 1243.